FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY M., | NO: 1:18-CV-03232-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 11, 12.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney Cory J. Brandt.  The

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER ~ 1

Defendant is represented by Special Assistant United States Attorney Lars J. Nelson. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 11, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

Plaintiff Kimberly M.[2] protectively filed for supplemental security income and disability insurance benefits on April 14, 2011. Tr. 190-202. Plaintiff alleged an onset date of October 31, 2009. Tr. 190, 194. Benefits were denied initially, Tr. 124-30, and upon reconsideration, Tr. 133-36. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 10, 2012. Tr. 35-79. Plaintiff had representation and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 19-34, and the Appeals Council denied review. Tr. 1. On June 23, 2014, the United States District Court for the Eastern District of Washington granted the parties' stipulated motion for remand, and remanded the case for further proceedings. Tr. 526-36. On April 14, 2015, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. Tr. 537-43.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

On December 3, 2015, Plaintiff appeared for an additional hearing before the ALJ. Tr. 463-95. The ALJ denied benefits, and the Appeals Council "declined to assume jurisdiction." Tr. 419-23. On February 22, 2017, the United States District Court for the Eastern District of Washington again remanded the case for further proceedings. Tr. 1124-39. On April 11, 2017, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. Tr. 537-43. On May 3, 2018, Plaintiff appeared for an additional hearing before the ALJ. Tr. 1041-77. On September 26, 2018, the ALJ denied benefits. Tr. 977-1009. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 37 years old at the time of the first hearing. Tr. 39. She reported that she graduated from high school. Tr. 1014. At the time of the most recent hearing, Plaintiff lived with her 12-year old daughter. Tr. 1051-52. She has work history as a certified nurse assistant and hospital unit clerk. Tr. 1014-16. Plaintiff testified that she stopped working because she started to have panic attacks at work. Tr. 1061.

Plaintiff testified that she cannot work because of severe anxiety disorder and fibromyalgia. Tr. 1023, 1056. She has had anxiety since she was a little girl, but "it's gotten a lot worse," and she never knows how she will feel each day

ORDER ~ 3

mentally or physically  Tr. 1056-57.  Plaintiff reported that her fibromyalgia makes her confused, she is not able to form sentences or find words, and she feels like she has "all over pain and sickness."  Tr. 1027, 1056, 1060.  She testified that she is unable to do activities as planned if she wakes up with an anxiety attack or she is in too much pain.  Tr. 1058-59.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER ~ 4

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 31, 2009, the alleged onset date. Tr. 983. At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety disorders (including general anxiety disorder); depressive/affective disorder; personality disorder; fibromyalgia; and obesity. Tr. 983. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 984. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers; that is predictable and with few work setting changes; and does not require public contact.

Tr. 986. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 998. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: small product assembler, marker, and garment sorter. Tr. 998-99. On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2009, through the date of the decision. Tr. 999.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ improperly discredited Plaintiff's symptom claims; and

3. Whether the ALJ erred at step five.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of treating physician Jeffrey Nelson, M.D.; examining psychologist Faulder Colby, Ph.D.; reviewing psychologist Aaron Burdge, Ph.D.; agency psychological consultants Judy K. Martin, M.D. and Sean Mee, Ph.D.; treating physician Nina Flavin, M.D.;

ORDER ~ 10

and treating providers Kimberly Ferguson, PA-C, Jaime Walker, ARNP, and Tyal Hughes, MS.  ECF No. 11 at 4-15.

### 1. *Jeffrey Nelson, M.D.*

In July 2012, treating physician Dr. Jeffrey Nelson opined that she had marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and three episodes of decompensation each of extended duration.  Tr. 376. Dr. Nelson further opined that Plaintiff would be "off task" for 25% or more of a typical workday; and Dr. Nelson anticipated that Plaintiff's impairments would cause him to be absent from work more than four days per month.  Tr. 376.  The ALJ gave little weight to Dr. Nelson's opinion.  Tr. 992.

As an initial matter, Plaintiff argues "the ALJ was instructed by the United States District Court to consider Ms. May's counseling notes in evaluating Dr. Nelson's opinion, as ordered by the Appeals Council.  However, he failed to adequately do this." ECF No. 11 at 6.  The Court agrees.  In the first ALJ decision, dated August 27, 2012, the ALJ rejected Dr. Nelson's 2012 opinion because it did "not provide evidence or argument to support the conclusions indicated by checked boxes," the "form makes no mention of any clinical findings," and the assessment "is contradicted by the evaluations of the medical consultants to the state agency." Tr. 504-05.  On June 23, 2014, the parties stipulated that the case should be remanded by the United States District Court, and the Appeals Council was directed to instruct the ALJ "to weigh all medical opinions of record, including the

ORDER ~ 11

opinions of the State's medical consultants and Jeffrey Nelson, M.D., articulating the weight assigned each opinion and the reasons for that weight with citation to the evidence of record as appropriate." Tr. 526-27. On April 14, 2015, the Appeals Council directed the ALJ to give further consideration to the treating and non-treating source opinions; and specifically noted that despite the lack of narrative explanation or clinical signs identified in Dr. Nelson's opinion, the ALJ did not "appropriately address the objective evidence from the doctor's treatment, which must be considered with his opinion," and the "decision does not adequately explain how [Dr. Nelson's] treatment notes support or contradict the doctor's opinion." Tr. 540-41. The Appeals Council also directed the ALJ to consider the counseling notes provided by Cheryl May in the weighing of Dr. Nelson's opinion. Tr. 541.

On January 22, 2016, the ALJ "reconsidered Dr. Nelson's opinions and continue to give them no weight," because: (1) Dr. Nelson's notes do not provide a basis for his conclusions; (2) the overall record does not support the marked limitations opined by Dr. Nelson. Tr. 1089-90. As noted by the ALJ in the current decision, the January 2016 decision was remanded by the United States District Court on February 22, 2017. Tr. 980, 1124-39. "The errors identified by the Court were that the [ALJ]: Failed to follow the direction of the Appeals Council remand order. Specifically, when weighing the opinion of Dr. Nelson, he did not consider the counseling notes from Cheryl May, as ordered by the Appeals Council." Tr. 980. On April 11, 2017, the Appeals Council directed that the case be assigned to

ORDER ~ 12

a different ALJ, and remanded the case for further proceedings consistent with the order of the court.  Tr. 980-81, 1142.

However, the ALJ's analysis of Dr. Nelson's opinion in this case is, for the most part, an identical copy of the prior analysis of Dr. Nelson's opinion in January 2016 ALJ decision.  Tr. 992-93, 1089-90.  In an apparent attempt to comply with the instructions from the Appeals Council, and two prior district court orders, the ALJ additionally noted that (1) he "considered the Compass Health treatment notes from mental health counselor Cheryl May," and found "the longitudinal evidence does not warrant a change in the weight [he] gave to Dr. Nelson's opinions"; and (2) "Ms. May's treatment notes show reports of symptoms and limitations that are essentially the same as those in the overall treatment record.  And, . . . . while the evidence suggests limitations, the overall record is not entirely consistent with [Plaintiff's] subjective report, and does not suggest more restrictions than those in the [assessed RFC]."  Tr. 993.  However, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id*.  Here, the ALJ fails to summarize and interpret the specific clinical findings by treating providers Dr. Nelson and Ms. May; thus, as noted by the district court in the February 2017 decision, "[w]ithout

adequate citation to Ms. May's counseling notes when considering Dr. Nelson's opinion, the Court cannot meaningful[ly] review the ALJ's decision to determine if she properly followed the direction of the Appeals Council."  Tr. 1128. Accordingly, the Court concludes the ALJ erred by failing to follow the remand order of the Appeals Council and two separate district court orders, and Dr. Nelson's opinion must be reconsidered on remand.[3]

### 2. *Judy K. Martin, M.D. and Sean Mee, Ph.D.*

In June 2011, Dr. Judy K. Martin opined that "with sobriety and treatment compliance," Plaintiff can: understand, remember and execute simple repetitive tasks for up to 2 consecutive hours with normal breaks for an eight-hour workday and 40-hour workweek, with occasional interruptions to pace and performance; and perform non-public work, in a setting that does not require extensive interaction with co-workers or supervisor.  Tr. 87-89.  In September 2011, Dr.

---

[3] The ALJ also generally found "the longitudinal evidence does not warrant a change in the weight I give to Dr. Nelson's opinions; [Plaintiff's] presentation in most [sic] record; her activities; and her work history are not consistent with the profound limitations indicated by Dr. Nelson."  Tr. 993.  In light of the ALJ's error in failing to comply with the remand orders of the Appeals Council and the district court, the ALJ must reconsider Dr. Nelson's opinion on remand, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence .

ORDER ~ 14

Sean Mee assessed identical limitations. Tr. 109-11. The Court gave "some weight" to the opinions because they "did not provide a full analysis of [Plaintiff's] functional limitations because they indicated that the assessed functional abilities would exist 'with sobriety and treatment compliance. As indicated in the regulations, the [RFC] is intended to capture the most that [Plaintiff] can do despite her limitations and restriction, not what [Plaintiff's] function could be in the context of certain treatment or other circumstances." Tr. 994. However, the ALJ then noted "on the other hand, the specific vocational restrictions they indicate seem generally consistent with the overall record," including: generally good function in mental status evaluations; symptoms controllable with medication; and activities such as attending her daughter's school concert and attending treatment visits on a regular basis." Tr. 994.

Plaintiff argues the ALJ "provided only vague, conclusory reasons for rejecting the opinions"; and failed to follow the order of the district court to reevaluate the opinions of Dr. Martin and Dr. Mee because the previous ALJ "failed to provide her interpretation of the evidence and she did not provide a detailed explanation as to why the opinions should be rejected." ECF No. 11 at 7 (citing Tr. 1132). Defendant argues that Plaintiff has not identified a conflict between the opinions and the RFC assessment "as required to demonstrate prejudice." ECF No. 12 at 12. However, based on a plain reading of the ALJ's decision, it is unclear to the Court how the ALJ could seemingly reject the state agency opinions because they "did not provide a full analysis of [Plaintiff's]

ORDER ~ 15

functional limitations because they indicated that the assessed functional abilities would exist 'with sobriety and treatment compliance,'" while simultaneously finding the "vocational restrictions they indicate seem generally consistent with the overall record." Tr. 994. The ALJ failed to offer sufficient reasons, supported by substantial evidence, to parse out and reject only the portion of the opinions that limited Plaintiff's functional abilities to existing only "with sobriety and treatment compliance." Thus, the ALJ must reconsider the opinions of Dr. Martin and Dr. Mee on remand.

### 3. Faulder Colby, Ph.D.

In May 2016, Dr. Faulder Colby examined Plaintiff and opined that she had severe limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 1585-86. Dr. Colby also assessed marked limitations in Plaintiff's ability to adapt to changes in a routine work setting, and communicate and perform effectively in a work setting. Tr. 1586. Finally, Dr. Colby opined that Plaintiff's overall severity rating based on the combined impact of all diagnosed mental impairments was "severe," which was defined as the inability to perform a particular activity in regular competitive employment or outside of a sheltered workshop. Tr. 1586. The ALJ gave Dr. Colby's opinion "less weight" for several reasons. Tr. 995-96.

ORDER ~ 16

First, the ALJ generally found that Dr. Colby "did not provide a specific rationale to explain [his] assessment of profound limitations," including: (1) overall assessment that Plaintiff's symptoms were "severe"; and (2) inability to complete a normal workday/workweek and to maintain regular work attendance. Tr. 995. Additionally, and "[m]ore importantly," the ALJ found that "[Dr. Colby's] assessment is essentially a finding that [Plaintiff] is cannot work, which is not a medical opinion, but a legal conclusion that is reserved to the Commissioner." First, the ALJ need not accept the opinion of any physician if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted). However, as noted by Plaintiff, this limitation was presumably based on the complete psychological evaluation performed by Dr. Colby, including extensive clinical findings and objective test results. ECF No. 11 at 9. Moreover, the ALJ is correct that a statement from a medical provider that Plaintiff is "unable to work" is not considered to be a medical opinion; rather, it is an administrative finding that would be dispositive of a case, and is therefore an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and (3); SSR 96-5p, *available at* 1996 WL 374183 at *2 (July 2, 1996) ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Thus, the ALJ did not err to the extent he disregarded Dr. Colby's opinion specifically as to Plaintiff's capacity to maintain employment; however,

1    this is not a specific and legitimate reason for the ALJ to reject the specific

2    functional limitations opined by Dr. Colby in his *medical* opinion.

3            Second, the ALJ found

4            Dr. Colby had little understanding of the longitudinal record on which to
             form an opinion because he reviewed no treatment notes or other medical
5            records apart from his own prior assessment. Therefore, he had to place a
             significant reliance on [Plaintiff's] subjective report in assessing her history
6            and level of functional restriction; however, her report was not entirely
             reliable. . . . [H]er subjective report included hearing and seeing ghosts and
7            demons, and that the ghosts and demons attacked her and [her] daughter
             physically. Dr. Colby found this report compelling, concluding that it was
8            indicative of abnormal thought process and perception; finding a diagnosis
             of delusional disorder; and noting that 'treatment of her psychotic disorder is
9            strongly recommended.' However, [Plaintiff's] rather dramatic report to Dr.
             Colby is not reflected in the overall treatment record, which tends to suggest
10           that she was exaggerating her symptom report in an attempt to obtain
             disability benefits.

11
     Tr. 995. An ALJ may reject a physician's opinion if it is based "to a large extent"
12
     on Plaintiff's self-reports that have been properly discounted as not credible.
13
     *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the only
14
     evidence cited by the ALJ in support of this finding was (1) Dr. Colby only
15
     reviewed his previous report and "the SSA determination against the [Plaintiff],"
16
     and did not review any "treatment notes or other medical records" as part of his
17
     evaluation of Plaintiff; and (2) Plaintiff reported to Dr. Colby that she had seen and
18
     heard ghosts and demons, but "this rather dramatic" subjective report is not
19
     consistent with the overall record "which tends to suggest that she is exaggerating
20
     her symptom report in an attempt to obtain benefits." Tr. 995 (citing Tr. 1581).
21
     However, the ALJ entirely failed to consider Dr. Colby's mental status

     ORDER ~ 18

examination, which included findings of flat affect, monotonic speech, shaking and trembling, abnormal perception, abnormal abstract thought, and abnormal insight and judgment. Tr. 1587-88. Similarly, the ALJ failed to consider portions of Dr. Colby's opinion that referenced clinical test results. *See* Tr. 1584-85 (noting "her MMPI-2 profile strongly suggested that a psychotic diagnosis would be appropriate"), 1587. Neither the ALJ, nor the Defendant, offers any evidence that Dr. Colby relied "to a large extent" on Plaintiff's subjective complaints as opposed to the clinical findings included in his examining report; and as discussed in detail below, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom complaints.

In addition, the tendency to exaggerate is a permissible reason for discounting a Plaintiff's symptom claims. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible). Similarly, evidence of motivation to obtain social security benefits may be considered in evaluating Plaintiff's symptom claims. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). However, as argued by Plaintiff, the mere fact that her reports to Dr. Colby regarding ghosts and

ORDER ~ 19

demons were not reflected across the overall record "does not necessarily discredit the information." ECF No. 13 at 6. Dr. Colby specifically noted that Plaintiff initially denied hallucinations, and "said she wished she had not mentioned them, after [Dr. Colby] probed about them." Tr. 1584, 1587. And most notably, the ALJ failed to consider Dr. Colby's conclusion that "using objective and actuarial (rather than more subjective 'clinical opinion') data, the evidence strongly favored, with only one possible exception, [a] hypothesis that [Plaintiff] was not trying to exaggerate her benefits symptoms in order to receive benefits but was, instead, being truthful." Tr. 1585. Based on the foregoing, the ALJ's rejection of Dr. Colby's opinion because it was based on Plaintiff's "exaggerated" self-report was not a specific and legitimate reason, supported by substantial evidence.

Third, the ALJ found Dr. Colby was "advocating for" Plaintiff because he did not review counseling records or treatment notes, and "reviewed only" his own prior evaluation and the SSA determination against Plaintiff; which "suggests his assessment was a response to the adverse decision of the Social Security Administration rather than an objective assessment of [Plaintiff's] functional limitations." Tr. 996. However, in the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. *Reddick*, 157 F.3d at 726. Moreover, an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits." *Lester*, 81 F.3d at 832. While the ALJ "'may

introduce evidence of actual improprieties,' no such evidence exists here." *Id*. This was not a specific and legitimate reason to reject Dr. Colby's opinion.

Finally, the ALJ found "the extreme limitations indicated by Dr. Colby are not consistent with the record as a whole." Tr. 995. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In support of this finding, the ALJ noted that Dr. Colby "indicated marked or even more severe limitation in social function, including the ability to communicate and behave appropriately. In contrast to such limitations, most treatment notes show that [Plaintiff] presented with little or no abnormality in speech, eye contact, behavior, or judgment. She was usually in no acute distress, and was cooperative and pleasant." Tr. 995 (citing Tr. 1426-27, 1430-31, 1438-39, 1442-43, 1492-93, 1548-53, 1595, 1644-50, 1676, 1680, 1684). The ALJ further cited Plaintiff's ability to "use tools she learned in treatment to help manage her anxiety," and attend a large wedding and her daughter's school concert. Tr. 995 (citing Tr. 1426 (reporting "big family wedding coming up"), Tr. 1353 (noting she used coping skills "sometimes with success and sometimes without success," Tr. 1640 (noting extreme anxiety at the prospect of attending the school concert), ); . *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may discount an opinion that is inconsistent with a claimant's reported functioning).

Plaintiff generally argues that this reason "was not valid because while there are some contrary notations in the record, there is a substantial amount of evidence

in the record that supports [Dr. Colby's] opinion," including Dr. Colby's own observations during the own mental status examination that Plaintiff had monotonic speech, shifted uncomfortably, had flat affect, tremulous voice, abnormal thought process, abnormal perception, abnormal concentration, and poor social judgment. ECF No. 11 at 9 (citing 1587-88). However, regardless of evidence that could be considered more favorably to Plaintiff, the ALJ reasonably considered inconsistency between the severity of Dr. Colby's assessed limitations and the longitudinal record, including Plaintiff's presentation on mental status examinations. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). Nonetheless, in light of the ALJ's errors in considering Dr. Colby's opinion, as discussed in detail above, and the need to reconsider Dr. Nelson, Dr. Martin, and Dr. Mee's opinions, the ALJ should reexamine Dr. Colby's opinion on remand.[4]

---

[4] In May 2016, Aaron Burdge, Ph.D. reviewed Dr. Colby's opinion and found the severity of his limitations were supported by medical evidence. Tr. 1589. The ALJ considered Dr. Burdge's assessment, and "for the same reasons [he] reject[ed] Dr. Colby's opinion, [he] also reject[ed] Dr. Burdge's opinion." Tr. 996. As discussed above, the ALJ erred in considering Dr. Colby's opinion; thus, Dr. Burdge's opinion should be reconsidered on remand along with the rest of the medical opinion evidence.

### 4. Nina Flavin, M.D.

In March 2018, treating rheumatologist Dr. Nina Flavin wrote a letter opining that due to Plaintiff's fibromyalgia "she is unable to continue working and I support her decision to apply for disability." Tr. 1572. However, Dr. Flavin declined to fill out the "medical report" evaluation (Tr. 1575-76) because she is "not a disability evaluator and [has] no formal training in assessing for functional disability." Tr. 1572. The ALJ gave little weight to Dr. Flavin's opinion because she "did not provide a function-by-function assessment with specific vocational limitations." Tr. 997. Where, as here, a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding of disability."). However, in light of the need to reconsider the medical opinion evidence, as discussed above, the ALJ may reconsider Dr. Flavin's opinion on remand.

### 5. Other Source Opinions

Finally, the ALJ considered and rejected "other source" opinions of Kimberly Ferguson, PA-C, Jaime Walker, ARNP, and Tyal Hughes, MS. Tr. 996. In June 2016, treating provider Kimberly Ferguson, PA-C opined that Plaintiff was unable to meet the demands of sedentary work "due to anxiety about personal

health." Tr. 1592. The ALJ gave no weight to Ms. Ferguson's opinion because (1) it was contradicted by her own examination findings that Plaintiff had normal muscle strength and range of motion in all extremities, and she was alert, oriented, cooperative and in no acute distress; and (2) it was contradicted by her "assessment that Plaintiff's anxiety symptoms were only mild, which means they cause no interference in work related activities." Tr. 997 (citing Tr. 1592-96). It is proper for the ALJ to reject a medical opinion if it is inconsistent with the provider's own treatment notes. *Tommasetti*, 533 F.3d at 1041.

In April 2018, treating providers Jaime Walker and Tyal Hughes assessed "marked or severe limitations in nearly all aspects [of] mental function, including cognitive and social abilities," and opined that Plaintiff's impairments would cause her to miss 4 or more days a month and be off task 50% of the work day. Tr. 996 (citing Tr. 1785-87). The ALJ found the opinion did not include "any rationale to explain such extreme limitations"; did not provide objective findings consistent with the severity of the limitations; and was not consistent with the longitudinal record. Tr. 996; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions).

Defendant contends these were "germane reasons for discounting the opinions of PA-C Ferguson, ARNP Walker, and Therapist Hughes's opinions."

ORDER ~ 24

ECF No. 12 at 17-19.  However, in light of the need to reconsider the medical

opinion evidence, as discussed in detail above, the ALJ should also reconsider

these "other source" opinions on remand.

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that his impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d

at 958 ("[T]he ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

ORDER ~ 25

discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. Tr. 18. However, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for the following reasons: (1) she stopped working due to factors other than her alleged impairments; (2) she exaggerated her symptoms in order to obtain benefits; (3) she was able to work in spite of her impairment; (4) her activities are not entirely consistent with her allegations; and (5) her alleged mental and physical limitations were not consistent with the overall medical record, and objective medical evidence. Tr. 987-992. Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints. ECF No. 11 at 15-19.

First, the ALJ found the "evidence suggests that Plaintiff stopped work and has difficulty finding work due to factors other than her alleged impairments." Tr. 988. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the Plaintiff's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In support of this finding, the ALJ cites Plaintiff's reports that she wanted to work but "the issue holding her back was reliable child care," and that she cannot juggle working full time and

ORDER ~ 26

caring for her child. Tr. 988 (citing Tr. 294, 348 (actually reporting that she "may" be able to work "in the future" with reliable childcare), 468). In December 2009, Plaintiff also reported that she quit her job due to anxiety and also because of difficulty working night shift with a three-year old at home. Tr. 294, 988. Based on this evidence, the ALJ concluded that "while the desire to raise a child is laudable, it is a lifestyle choice and not an appropriate basis for a finding of disability." Tr. 988. Plaintiff acknowledges that childcare concerns were a part of Plaintiff's reasons for stopping work, but contends the primary reason that she stopped working was anxiety. ECF No. 11 at 17. The Court agrees. The records cited by the ALJ also reflect Plaintiff's consistent reports that even if she didn't have a child, she could not work full time because of anxiety attacks and fibromyalgia pain. Tr. 475-76. Thus, substantial evidence does not support the ALJ's finding that Plaintiff stopped working for reasons entirely "unrelated" to her alleged anxiety condition. *See Bruton*, 268 F.3d at 828. This was not a clear and convincing reason to discount Plaintiff's symptom claims.

Second, the ALJ found that Plaintiff's "subjective complaints were not a genuine report of symptoms and limitations; rather, her reports constituted an attempt to obtain disability benefits." Tr. 988-89. The tendency to exaggerate is a permissible reason for discounting a Plaintiff's symptom claims. *See Tonapetyan*, 242 F.3d at 1148; *see also Matney*, 981 F.2d at 1020 (evidence of motivation to obtain social security benefits may be considered in evaluating Plaintiff's symptom claims). In support of this finding, the ALJ cites (1) examining psychologist Dr.

Sylvia A. Thorpe's notation that Plaintiff may have been malingering because she avoided answering certain questions, and her performance during digit span retention was "odd" and "unpredictable"; and (2) "marked inconsistencies between [Plaintiff's] report to Dr. Colby and her report to other providers." Tr. 988-89. However, Dr. Thorpe merely questioned whether Plaintiff was possibly malingering, but made no definitive finding on the matter; and, as discussed in detail above, Dr. Colby specifically found that objective testing "strongly favored" a finding that Plaintiff was not exaggerating her symptoms to obtain benefits. Tr. 988, 1585. Thus, this was not a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Third, the ALJ found that Plaintiff "was able to work with her primary impairment of anxiety, which suggests that it is not as limited as she alleges." Tr. 989. In support of this finding, the ALJ cited evidence that Plaintiff engaged in regular work activity from 1996 through "most of 2009." Tr. 989. Generally, the ability to work can be considered in assessing credibility. *Bray*, 554 F.3d at 1227; *see also* 20 C.F.R. § 404.1571 (employment "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level). However, "occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester*, 81 F.3d at 833); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and

limitations severe enough to preclude him from *maintaining* substantial gainful employment."). Moreover, the ALJ relies entirely on Plaintiff's work history prior to her alleged onset date of disability, and acknowledges that she was "able to work with [anxiety] prior, but it has become worse, and she stopped working due to increased panic attacks." Tr. 989. Plaintiff's work history prior to her onset date of disability is of limited probative value. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Turner*, 613 F.3d at 1224. For all of these reasons, Plaintiff's ability to work prior to her alleged onset date was not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims..

Fourth, the ALJ found Plaintiff's activities were not entirely consistent with her allegations. Tr. 990. Even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. In support of this finding, the ALJ cited evidence that Plaintiff was able to care for her daughter, perform household chores, shop at the grocery store, attend treatment visits independently, take her daughter to the pet store, keep track of things that need to be done with reminders and notes, and drive a car. Tr. 990 (citing Tr. 1088, 1052-54, 1304-06). However, as noted by Plaintiff, she has consistently reported that she received help with daily activities and caring for her daughter from family members, she was often unable to do these activities due to pain and anxiety, and she took frequent breaks throughout the day. Tr. 1058-59,

ORDER ~ 29

1062, 1088, 1305, 1339, 1365; *See Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) ("the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations."). Moreover, the ALJ relies on multiple single instances of "activities" such as helping her mom and sister move, attending a large wedding, attending her daughter's concert, and "navigating" the court system when her child was taken away by CPS; but the ALJ does not consider Plaintiff's reports of extreme anxiety at the time of these events. Tr. 814, 990, 1460, 1640, 1682. Thus, while it was reasonable for the ALJ to consider Plaintiff's daily activities, the Court finds this does not rise to the level of a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

Finally, the ALJ found Plaintiff's alleged mental and physical limitations were not consistent with the overall medical record, and objective medical evidence. Tr. 990-92. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Here, the ALJ set out, in detail, the medical evidence purporting to contradict Plaintiff's claims of disabling mental limitations, including treatment notes that showed no abnormality in speech, eye contact, affect, thought process,

ORDER ~ 30

memory, attention, concentration, behavior, or judgment.  Tr. 991 (citing Tr. (1426-27, 1430-31, 1438-39, 1442-43, 1492-93, 1548-53, 1595, 1644-50, 1676, 1680, 1684).  Similarly, the ALJ set out objective findings to contradict Plaintiff's claims of disabling physical limitations, including: no muscle atrophy or joint swelling; "no significant abnormality in any area, including gait, strength, range of motion, coordination, sensation, balance, and neurological function"; and largely normal imaging of her brain, hands, knees, left arm, left shoulder, head and spine. Tr. 992 (citing Tr. 1333, 1376, 1378, 1382, 1411-13, 1596, 1634, 1668, 1676, 1680, 1684, 1783-84, 1788, 1792, 1804-05, 1817).

Plaintiff argues that mental status examinations also "showed abnormal functioning in many categories," and notes that "minimal objective findings are a defining characteristic of fibromyalgia."  ECF No. 11 at 18-19.  However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47. As discussed in detail above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient.  Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The ALJ's rejection of Plaintiff's symptom claims is not supported by clear and convincing reasons, and must be reconsidered on remand. Moreover, in light of the need to reconsider the medical opinion evidence, as discussed in detail above, the ALJ should reconsider the objective medical evidence in the context of Plaintiff's symptom claims.

**C. Step Five**

Plaintiff also challenges the ALJ's findings step five. ECF No. 11 at 18. Because this analysis is dependent on the ALJ's evaluation of the medical opinion evidence and Plaintiff's symptom claims, which the ALJ is instructed to reconsider on remand, the Court declines to address these challenges here. On remand, the ALJ is instructed to conduct a new sequential analysis after reconsidering the medical opinion evidence and Plaintiff's symptom claims.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these

conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered medical opinion evidence and Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should also reconsider Plaintiff's symptom claims, and the remaining steps in the sequential evaluation analysis. Finally, the ALJ

should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 24, 2020.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge